THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JO ANN ALLEN,                           :
                                        :
            Plaintiff,                   :
    v.                                   :        3:18-CV-209
                                        :        (JUDGE MARIANI)
LACKAWANNA COUNTY BOARD OF               :        (Magistrate Judge Mehalchick)
COMMISSIONERS, et al.,                   :
                                        :
            Defendants.                  :

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is a Report and Recommendation ("R&R") (Doc. 100) by

Magistrate Judge Karoline Mehalchick in which she recommends that Defendants' Motion

for Summary Judgment (Doc. 67) be granted as to Plaintiff's federal claims and Plaintiff's

state law claims be dismissed without prejudice.  (Doc. 100 at 33).  The operative complaint

was filed on January 31, 2019, and is titled "Magistrate Judge Ordered, Amended

Complaint" (Doc. 35), which the Court accepted as Plaintiff's "Second Amended Complaint."

(See Doc. 42 at 8).

Plaintiff filed two series of objections to the R&R on August 7, 2020 (Doc. 101) and

on August 11, 2020 (Doc. 103).[1]  Defendants filed a response to Plaintiff's objections on

---

[1] Both of Plaintiff's objections to the R&R (Doc. 101, Doc. 103) appear to be identical, with the only obvious difference being that Document 103 contains a Certificate of Service and a scanned PDF of the envelope Plaintiff used to mail this document.  For purposes of this Opinion, the Court will use Document

August 21, 2020 (Doc. 104).  Plaintiff then filed a document titled "Plaintiff's Corrections to

Defendants' brief in Opposition to Plaintiff's Objections to the Report + Recommendations of

Magistrate Judge, Karoline Mehalchick" (Doc. 105) on September 2, 2020.  This matter is

now ripe for disposition.

## II. Statement of Undisputed Material Facts

Defendants filed a "Statement of Undisputed Material Facts in Support of their

Motion for Summary Judgment" (Doc. 68).  Plaintiff filed a "Retort to Defendants' Statement

of Undisputed, Material Facts" (Doc. 82) in which she identifies each statement from

Defendants' Statement of Facts as "fact" or "fallacy."  (*See generally* Doc. 82).

The Court takes all stated material facts which are undisputed and supported by the

record as true, and the Court will construe all facts in the light most favorable to Plaintiff.

Plaintiff asserts multiple objections to Magistrate Judge Mehalchick's summary of material

facts.  (Doc. 103 at 2-7).  In her objections, however, Plaintiff argues the merits of her claims

and provides additional facts that are not undisputed.[2]  As such, the Court overrules

Plaintiff's objections to Judge Mehalchick's summary of material facts.

---

103, the most recently filed document, to evaluate Plaintiff's objections to Magistrate Judge Mehalchick's R&R.

[2] For example, Plaintiff objects to the summary of material facts because Judge Mehalchick "did not notice many of the Plaintiff's, disputed facts, or take Allen's noted facts in a favorable light, within [her] July 28, 2020, Report and Recommendations to the Article III, District Judge." (Doc. 103 at 2).  Many of the statements contained within Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (Doc. 82) contain facts that are in dispute or argue the merits of her case.  Upon review, this Court determines that Judge Mehalchick included only those facts which are not in dispute unless otherwise noted.

Magistrate Judge Mehalchick summarized the material facts as follows:

Plaintiff Jo Ann Allen was employed as an Aging Care Manager II at the Lackawanna County Area Agency on Aging ("AAA"). (Doc. 68, ¶ 1; Doc. 82, ¶ 1). Pending before the Court is Plaintiff's second amended complaint. (Doc. 68, ¶ 2; Doc. 82, ¶ 2). Pursuant to Judge Mariani's September 23, 2019, Order, Plaintiff's claims for (1) retaliation under the ADA; (2) hostile work environment under the ADA; (3) failure to accommodate under the ADA; (4) disability discrimination under the ADA; (5) FMLA retaliation; (6) fraud; (7) intentional infliction of emotional distress; and (8) Fourteenth Amendment Due Process claims against Lackawanna County in connection with Plaintiff's October 19, 2016, and November 1, 2016, pre-termination notices survived Defendants' Motion to Dismiss. (Doc. 68, ¶ 3; Doc. 82, ¶ 3).

Plaintiff was sent a due process notice on April 25, 2016, scheduling a due process hearing for May 10, 2016, at 9:00 a.m. related to Plaintiff's suspected failure to deal with the public in a courteous manner and suspected neglect of duty related to careless workmanship resulting in waste or delay. (Doc. 68, ¶ 4; Doc. 82, ¶ 4; Doc. 68-1, at 13). Plaintiff submits that this was in conflict with the organization's discipline procedure as dictated by its Employee Guidelines Manual and Contract Agreement with Allen's union. (Doc. 82, ¶ 4; Doc. 84, at 4-5, 7, 8, 9, 17-18).[3] Subsequent to receiving the April 25, 2016, notice, Plaintiff exercised her entitlement to leave under the Family and Medical Leave Act ("FMLA"). (Doc. 68, ¶ 5; Doc. 82, ¶ 5). On May 23, 2016, Plaintiff was issued a second notice rescheduling Plaintiff's due process hearing to May 26, 2016. (Doc. 68, ¶ 6; Doc. 82, ¶ 6). Again, upon receipt of the May 23, 2016, notice, Plaintiff exercised entitlement to FMLA leave. (Doc. 68, ¶ 7; Doc. 82, ¶ 7). On June 27, 2016, Plaintiff was issued a third notice scheduling a due process hearing for July 7, 2016, or alternatively providing for Plaintiff to respond in writing to the allegations by July 6, 2016. (Doc. 68, ¶ 8; Doc. 82, ¶ 8).

On July 22, 2016, Plaintiff was given a written warning as a result of her misuse of SAMS and breaches of confidentiality. (Doc. 68, ¶ 9; Doc. 82, ¶ 9). On July 28, 2016, pending the outcome of an investigation into Plaintiff's conduct, Plaintiff's job duties were changed. (Doc. 68, ¶ 10; Doc. 82, ¶ 10). Defendants assert that Plaintiff's job duties were changed consistent with her request, however Plaintiff disagrees with this assessment. (Doc. 68, ¶ 10; Doc. 82, ¶

---

[3] The Court notes that the disciplinary schedule is non-binding when the County deals with major disciplinary and/or repeated violations. (Doc. 84, at 5).

10).  Defendants assert that Plaintiff returned from FMLA leave on July 28, 2016, though this is not supported by the record; Plaintiff submits that she returned from FMLA leave on July 18, 2016, which is supported by Plaintiff's testimony before the Unemployment Compensation Board of Review.  (Doc. 68, ¶ 11; Doc. 82, ¶ 11; Doc. 68-1, at 235).  Subsequent to each pretermination due process notice, Plaintiff would take leave.  (Doc. 68, ¶ 12; Doc. 82, ¶ 12).

Plaintiff was again provided with pretermination due process notices on October 19, 2016, and November 1, 2016.  (Doc. 68, ¶ 13; Doc. 82, ¶ 13).  The October 19, 2016, pre-termination due process notice indicated charges that Plaintiff was (1) absent without leave; (2) had unauthorized access to the Department of Aging' Social Assistance Management System ("SAMS") through a non-agency computer, (3) falsified documentation, (4) used confidential consumer information for personal use, and (5) was insubordinate. (Doc. 68, ¶ 14; Doc. 84 ¶ 14).  On October 25, 2016, Plaintiff responded to the allegations to the October 19, 2016, pretermination notice.  (Doc. 68, ¶ 15; Doc. 82, ¶ 15).  Subsequently, Defendants issued a supplemental pre-termination notice on November 1, 2016, including a statement that the date and time of the proposed due process hearing would be November 9, 2016, at 10:30 a.m. (Doc. 68, ¶ 16; Doc. 82, ¶ 16).  The November 1, 2016, pretermination notice contained a list of allegations indicating that Plaintiff was (1) absent without leave, (2) unauthorized access to the Department of Aging's Social Assistant Management System ("SAMS") through a non-agency computer, (3) falsified documentation, (4) used confidential consumer information for personal use, and (5) was insubordinate.  (Doc. 68, ¶ 17; Doc. 82, ¶ 17).  The November 1, 2016, pre-termination notice contained a questionnaire and requested a written response as an alternative to an in-person hearing.  (Doc. 68, ¶ 18; Doc. 82, ¶ 18).   The November 1, 2016, pre-termination notice indicated that the allegations contained in the notice could lead to discipline up to and including termination.  (Doc. 68, ¶ 19; Doc. 82, ¶ 19).

On November 3, 2016,[4] after receiving the October 19, 2016, and November 1, 2016, pre-termination notices, Plaintiff sought a reasonable accommodation for her alleged disabilities.  (Doc. 68, ¶ 20; Doc. 82, ¶ 20).  On November 9, 2016, Plaintiff provided a response to the November 1, 2016, pre-termination

---

[4] Defendants state that the reasonable accommodation request was sought on November 3, 2019, though this appears to be a typographical error.  (Doc. 68, ¶ 20).

notice.[5]  (Doc. 68, ¶ 21; Doc. 82, ¶ 21).  On November 14, 2016, an interactive process meeting was held between the County and Plaintiff.  (Doc. 68, ¶ 22; Doc. 82, ¶ 22).

On November 18, 2016, Plaintiff was given a letter indicating that she had been terminated effective November 21, 2016, for (1) unauthorized access to SAMS through a non-agency computer, (2) falsification of documentation, (3) using confidential consumer information for personal use, and (4) insubordination. (Doc. 68, ¶ 23; Doc. 82, ¶ 23).  The November 18, 2016, letter indicated that while Plaintiff's response of November 12, 2016, was untimely, it was taken into consideration along with an October 25, 2016, letter sent by Plaintiff.  (Doc. 68, ¶ 24; Doc. 82, ¶ 24).[6]  Subsequent to Plaintiff's termination, Plaintiff was sent a letter indicating that her request for accommodation was moot.  (Doc. 68, ¶ 25; Doc. 82, ¶ 25).

After Plaintiff's termination, she sought unemployment compensation, and a hearing was held on January 31, 2017, before an Unemployment Compensation referee.  (Doc. 68, ¶ 26; Doc. 82, ¶ 26).  At the unemployment compensation hearing, an email containing the pertinent portion of the County's SAMS access policy was entered into evidence.  (Doc. 68, ¶ 27; Doc. 82, ¶ 27). Plaintiff contends that this email misrepresented the policy, as it portrayed the policy as stating SAMS could only be <u>accessed</u> using an agency-issued computer and the police required all <u>work</u> to be performed on an agency-issued computer.   (Doc. 82, ¶ 27).[7]   On February 2, 2017, the Unemployment Compensation Referee issued an order terminating Plaintiff's unemployment compensation benefits.  (Doc. 68, ¶ 28; Doc. 82, ¶ 28).  On April 20, 2017, the Unemployment Compensation Board of Review issued an order affirming the February 2, 2017, Unemployment Compensation Referee's Decision to terminate Plaintiff's unemployment compensation benefits.  (Doc. 68, ¶ 29; Doc. 82, ¶ 29).

---

[5] Defendants assert that this response was provided on November 12, 2016, however the response is dated November 9, 2016.  (Doc. 68, ¶ 21; Doc. 68-1, at 34-36).

[6] Again, the record indicates Plaintiff responded on November 9, 2016.  (Doc. 68-1, at 34-36).

[7] The policy states, "All staff are required to perform work via either a laptop or a desktop computer that is issued by the Agency." (Doc. 84, at 3).

The Lackawanna County Area Agency on Aging policy regarding accessing SAMS states in pertinent part, "All staff are required to perform work via either a laptop or a desktop computer that is issued by the agency." (Doc. 68, ¶ 30; Doc. 82, ¶ 30). The email that Plaintiff alleges is false or that was used fraudulently states:

> Reminder . . . since SAMS is an internet based program, it can be accessed anywhere there is an internet connection. It is the policy of our agency that SAMS ONLY be accessed using an LCAAA issued laptop. A home computer/tablet/laptop is NOT to be used to access SAMS.

(Doc. 68, ¶ 31; Doc. 82, ¶ 31) (emphasis in original).

On January 8, 2016, Plaintiff cross-filed a charge of discrimination with the EEOC and PHRC. (Doc. 68, ¶ 33; Doc. 82, ¶ 33). Plaintiff's charge of discrimination was dismissed, and Plaintiff was issued a ninety (90) day right to sue letter. (Doc. 68, ¶ 34; Doc. 82, ¶ 34).

(Doc. 100 at 2-7).

## III. STANDARD OF REVIEW

A district court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3); M.D.Pa. Local Rule 72.3; *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). If a party does not object timely to a magistrate judge's report and recommendation, the party

may lose its right to *de novo* review by the district court." *EEOC v. City of Long Island Branch*, 866, F.3d 93, 99-100 (3d Cir. 2017).  However, "because a district court must take some action for a report and recommendation to become a final order and because the authority and the responsibility to make an informed, final determination remains with the judge, even absent objections to the report and recommendation, a district court should afford some level of review to dispositive legal issues raised by the report." *Id.* at 100 (internal citations and quotation marks omitted).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990).  Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)-(B).  In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record."

7

Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

### III. ANALYSIS

Having conducted *de novo* review, the Court agrees with the R&R's conclusions that Defendants' Motion for Summary Judgment (Doc. 67) should be granted as to Plaintiff's

federal claims and that Plaintiff's state claims should be dismissed without prejudice. As such, the Court will adopt the R&R.

### a. Claims Brought Pursuant to the ADA[8]

Plaintiff alleges that Defendants violated her rights under the Americans with Disabilities Act ("ADA") in Counts One, Four, Five, and Six of her Second Amended Complaint. (Doc. 35 at 3, 6-11). The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual" as it pertains to his or her employment. 42 U.S.C. § 12112(a). Discrimination under this provision includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ..., unless such covered entity can demonstrate that the accommodation would pose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). The ADA, in its relevant retaliation provision, also states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by the [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a).

ADA discrimination and retaliation claims can be established through direct or circumstantial evidence. *See Strausser v. Gertrude Hawk Chocolate, Inc.*, 2018 WL

---

[8] On pages 7-9 of Plaintiff's Objections to the R&R (Doc. 103) under the heading titled "Page 9; paragraph 1," Plaintiff appears to reassert her opposition to the Motion for Summary Judgment instead of asserting objections to Magistrate Judge Mehalchick's R&R. (Doc. 103 at 7-9). As this "objection" does not address Judge Mehalchick's analysis or conclusions, the Court will overrule this objection.

1470796, at *2 (M.D. Pa. 2018).  "Direct evidence of discrimination would be evidence

which, if believed, would prove the existence of the fact in issue *without inference or*

*presumption.*"  *Torre v. Casio, Inc.,* 42 F.3d 825, 829 (3d Cir. 1994) (emphasis in original;

internal brackets and quotation marks omitted).  "[E]vidence is not direct where the trier of

fact must *infer* the discrimination ... from an employer's remarks."  *Id.* (emphasis in original).

Absent direct evidence, discrimination and retaliation claims are evaluated pursuant

to the burden shifting framework promulgated in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973).  Under *McDonnell Douglas*' burden-shifting framework,

> [the employee] has the initial burden of establishing a prima facie case. To do
> so, she must point to evidence in the record sufficient to create a genuine
> factual dispute about each of the three elements of her retaliation claim: (a)
> invocation of an FMLA right, (b) termination, and (c) causation. If [the
> employee] can do so, the burden of production shifts to [the employer] to
> articulate some legitimate, nondiscriminatory reason for its decision. If [the
> employer] meets this minimal burden, [the employee] must point to some
> evidence, direct or circumstantial, from which a factfinder could reasonably . . .
> disbelieve [the employer's] articulated reasons.

*Id.* (internal citations and quotations omitted).

### i. Count One: Retaliatory Discharge

Count One of Plaintiff's Second Amended Complaint alleges retaliatory discharge

under the ADA related to Plaintiff's reasonable accommodation request for her osteoarthritis

on November 3, 2016, and her subsequent termination from employment on November 18,

2016.  (Doc. 35 at 3).  According to Defendants, they are entitled to summary judgment on

this claim because there is record evidence that Plaintiff's termination was founded on

legitimate, non-discriminatory reasons and "Plaintiff has not adduced any evidence

controverting the legitimate non-discriminatory reasons for her termination as outlined in the

November 18, 2016 notice of termination." (Doc. 69 at 15-16).[9]

Magistrate Judge Mehalchick recommended that Defendants be granted summary

judgment on Plaintiff's ADA retaliation claim because

> the record lacks evidence which a reasonable fact-finder could use to find a
> causal link between Allen's request for reasonable accommodation and her
> subsequent termination. *Krouse*, 126 F.3d at 500.  Additionally, Defendants
> have submitted evidence that they had a legitimate, non-retaliatory reason for
> taking adverse employment action against Allen. (Doc. 68, ¶¶ 14, 17, 23; Doc.
> 82, ¶¶ 14, 17, 23).  Having failed to refute Defendants' proffered reasons with
> evidence of her own, Allen has failed to raise a genuine issue of fact as to
> whether Lackawanna County's proffered reasons were not its true reasons for
> the challenged employment action. *See Krouse*, 126 F.3d at 504.

(Doc. 100 at 15).

To establish a claim for unlawful retaliation pursuant to the ADA, "a plaintiff must

show (1) protected employee activity; (2) adverse action by the employer either after or

contemporaneous with the employee's protected activity; and (3) a causal connection

between the employee's protected activity and the employer's adverse action." *Krouse v.*

---

[9] In her Objections, Plaintiff states that she "has repeatedly refuted and casted serious doubt upon
the LC proffered reasons for her ACM2 firing to this Honorable Court" and argues that the discovery
schedule, "coupled with Defendants' refusal to disclose evidence in [their] possession, custody, control, to
conduct depositions, and to answer Plaintiff's listed Interrogatories, as well as, the ignorance of the legally-
unrepresented Allen...contributed to the current status of this case." (Doc. 103 at 9).  While the Court takes
note of Plaintiff's repeated opposition to Defendants' reasons for Plaintiff's termination, Plaintiff has not
supported her position with record evidence at this stage, and Plaintiff cannot use speculative "in-person
witness-testimony at trial" to support her claim at this stage.  *See generally* Fed. R. Civ. P. 56.  As such,
this objection is overruled.

*American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997)).

As to the first element, "[i]t is undisputed that Allen made a good-faith request for an accommodation, which constitutes protected employee activity under the ADA[.]" (Doc. 100 at 11); *see Allen v. Lackawanna Cty. Bd. of Commissioners*, 2019 WL 4621276, at *6 (M.D. Pa. Aug. 23, 2019), *report and recommendation adopted as modified*, 2019 WL 4644244 (M.D. Pa. Sept. 23, 2019) ("With respect to the first element of a prima facie retaliation claim, a good-faith request for an accommodation constitutes protected employee activity under the ADA." (citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003)). It is also undisputed that after making the good-faith accommodation request, Plaintiff was terminated, which qualifies as an adverse action by her employer. (*Id.*); *see Aguiar v. Morgan Corp.*, 27 F. App'x 110, 112 (3d Cir. 2002) (finding that the plaintiff's termination satisfies the second prong of the plaintiff's ADA retaliation claim).

Therefore, the only disputed element of Plaintiff's ADA is causation. Magistrate Judge Mehalchick summarized the causation standard for ADA retaliation claims as follows:

> The final element, the causal connection, often rests on two key factors: "(1) the temporal proximity between the protected activity and the alleged retaliation and (2) the existence of a pattern of antagonism in the intervening period."[10] *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006) (internal quotations omitted).

---

[10] "The Court measures temporal proximity from the date on which the litigant engaged in his first protect[ed] action." *Gairloch v. Pa. State Univ.*, 84 F.Supp.2d 407, 418 (M.D.Pa. 2015). If temporal proximity between the protected activity and the adverse employment action is not close enough to give rise to an inference of causation, courts then determine "whether plaintiff's allegations as a whole raise an inference of discrimination." *Murphy v. McLane Eastern Inc.*, 2017 WL 770653, at *5 (M.D.Pa. 2017).

> When analyzing an ADA retaliation claim, courts use the same framework as that employed for retaliation claims arising under Title VII. *Krouse*, 126 F.3d at 500. To obtain summary judgment on an ADA retaliation claim, the employer must show that, as a matter of law, the trier of fact could not conclude "(1) that retaliatory animus played a role in the employer's decisionmaking process and (2) that it had a determinative effect on the outcome of that process." *Krouse*, 126 F.3d at 501. An employer may accomplish this showing by establishing the plaintiff's inability to raise a genuine dispute of material fact as to either "(1) one or more elements of the plaintiff's *prima facie* case or, (2) if the employer offers a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext for the retaliation." *Krouse*, 126 F.3d at 501.

(Doc. 100 at 11-12).

As explained by Magistrate Judge Mehalchick, Plaintiff's first protected action took place on November 3, 2016 when she requested an accommodation for long distance walking due to her Osteoarthritis. (Doc. 100 at 13; Doc. 68 at ¶ 20; Doc. 82 at ¶ 20). Plaintiff's employment was subsequently terminated fifteen days later on November 18, 2016. (Doc. 100 at 13; Doc. 68 at ¶ 23; Doc. 82 at ¶ 23). "[T]emporal proximity between the protected activity and the termination is [itself] sufficient to establish a causal link" if such timing is found to be "unusually suggestive" of a retaliatory motive. *Shellenberger*, 318 F.3d at 189, n.9 (internal citations and quotations omitted). The Third Circuit has held that two days is sufficient to establish causation, *see Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 & n.5 (3d Cir. 2000), but ten days was insufficient to establish causation in the absence of additional evidence of the employer's wrongdoing, *see Shellenberger*, 318 F.3d 189. *See Breslin v. Dickinson Tp.*, 2012 WL 7177278, at *16 (M.D.Pa. March 23, 2012)

(quoting *Conklin v. Warrington Tp.*, 2009 WL 1227950, at *3 (M.D.Pa. April 30, 2009)).

"This suggests that the temporal proximity must be measured in days, rather than in weeks

or months, to suggest causation without corroborative evidence." *Id.*[11]

> Magistrate Judge Mehalchick concluded,
>
>> Fifteen days, or just over two weeks, is not an unusually suggestive timespan
>> so as to unilaterally raise an implication of retaliatory motive. *Abdul-Latif v.
>> Cnty of Lancaster*, 990 F.Supp.2d 517, 530 (E.D.Pa. 2014) ("[S]ix days is at
>> the long end of what has been held to be unusually suggestive"); *Breslin*[ *v.
>> Dickinson Tp.*], 2012 WL 7177278, at *16 [M.D.Pa. 2012]. Allen presents no
>> other evidence that Lackawanna County's decision to terminate her
>> employment was caused by her request for an accommodation. As such,
>> Allen fails to establish a *prima facie* case of retaliation.

(Doc. 100 at 13-14).

Plaintiff objects to Magistrate Judge Mehalchick's finding, arguing that she "has

established a *prima facie* case for retaliation under the ADA, with evidence of causation,

and the [Lackawanna County] pattern of antagonism towards her." (Doc. 103 at 11).

Although she does not explain to what, exactly, this "pattern of antagonism" refers, the

Court understands this statement as relating to the due process notices and written

warnings Defendants sent Plaintiff prior to her reasonable accommodation request on April

25, 2016, May 23, 2016, June 27, 2016, July 22, 2016, October 19, 2016, and November 1,

2016. (Doc. 68-1 at 7-13, 18-19, 21-22, 30-33).

---

[11] In Plaintiff's Objections to the R&R, she quotes this line from *Breslin*, but does not offer
additional analysis or explanation about her objection. (Doc. 103 at 11 ("This Court has explained that an
'unusually suggestive' timespan is 'composed of days, not weeks...for deciding a retaliatory motive. *Breslin
v. Dickinson Tp.*, 2012 WL 7177278, at *16 (M.D.Pa. 2012)")).

The various due process notices and written warnings Defendants sent to Plaintiff kept her apprised of the allegations asserted against her, kept her informed of the date at which in-person due process hearing would be held because the hearing was rescheduled multiple times to accommodate Plaintiff's FMLA leave, and provided her with an opportunity to respond to the allegations in writing.  (*See id.*).  It cannot be said that Plaintiff's receipt of multiple due process notices and warnings meant to keep her informed of the pending allegations against her, which Defendants were obligated to do, presents evidence of a pattern of antagonism.  *See Castellani v. Bucks Cnty. Municipality*, 351 F. App'x 774, 777 (3d Cir. 2009) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 312 (3d Cir. 1999)). Plaintiff has not supported this objection with citations to caselaw or citations to the record. As such, this Court will overrule Plaintiff's objections on this issue.

Plaintiff also objects to the R&R by arguing that although her accommodations request is dated November 3, 2016, Defendants actually received the request on November 8, 2016, leaving only ten days in between her request and her termination, and she claims Defendants acted in "bad faith."  (*Id.* at 10).  Plaintiff has not supported her allegation that Defendants did not receive her request until November 8, 2016, with record evidence, and opposition to summary judgment may not rest on a party's pleadings alone.  Fed. R. Civ. P. 56(c)(1)(A)-(B); *Anderson*, 477 U.S. at 248.  The Court finds that the fifteen-day delay between Plaintiff's accommodation request and her termination was not "unusually suggestive," and Plaintiff offers no additional evidence of Defendants' wrongdoing to

support her allegations of retaliation.  *See Abdul-Latif v. Cnty. of Lancaster*, 990 F.Supp.2d

517, 531 (E.D.Pa. 2014) (finding that the plaintiff established a causal connection between

her protected activity and termination even though "six days is at the long end of what has

been held to be unusually suggestive" because the plaintiff presented additional activity by

the defendant that, when taken together with temporal proximity, supported her claim).  As

such, the Court will overrule Plaintiff's objection.

Magistrate Judge Mehalchick continues the analysis of Plaintiff's ADA retaliation

claim:

> Had Allen presented evidence of causation, Defendant Lackawanna County
> would have inherited a "relatively light" burden of advancing a legitimate, non-
> retaliatory reason for terminating Allen.  *See Krouse*, 126 F.3d at 500.  Any
> legitimate reason will do; there is no need for the employer to prove the stated
> reason actually motivated the action.  *Krouse*, 126 F.3d at 501.  Defendants
> met this burden by producing notices they sent to Allen on October 19, 2016,
> and on November 1, 2016, identifying charges that she (1) was absent without
> leave, (2) had unauthorized access to the Department of Aging's Social
> Assistance Management System ("SAMS") through a non-agency computer,
> (3) falsified documentation, (4) used confidential consumer information for
> personal use, and (5) was insubordinate.  (Doc. 68, ¶¶ 14, 17; Doc. 82, ¶¶ 14,
> 17).  The reasons given for her termination were identical to these charges.
> (Doc. 68, ¶¶ 14, 17, 23; Doc. 82, ¶¶ 14, 17, 23).  These notices were sent to
> Allen prior to her request for reasonable accommodation on November 3, 2016,
> therefore they constitute evidence of a legitimate, non-retaliatory reason for
> terminating Allen.  *See Krouse*, 126 F.3d at 500.

> Upon Defendants advancing such reason, "[Allen] must produce sufficient
> evidence to raise a genuine issue of fact as to whether the employer's proffered
> reasons were not its true reasons for the challenged employment action," which
> is usually done "by demonstrating such weakness, implausibilities,
> inconsistencies, incoherencies, or contradictions in the employer's proffered
> legitimate reasons for its action that a reasonable factfinder could rationally find
> them 'unworthy of credence.'"  *Krouse*, 126 F.3d at 504 (internal quotations

omitted).   Allen has not attempted to produce such evidence, rather she contends that the notices used as evidence by Defendants were null and void. (Doc. 83 at 8-9).

(Doc. 100 at 14).

Plaintiff objects, arguing that she "has produced sufficient evidence to raise a genuine dispute of material fact as to the LC proffered reasons for her termination by demonstrating weakness, implausibility, and incoherence, so that a reasonable, impartial factfinder could rationally find them 'unworthy of credence.'"  (Doc. 103 at 11).  In response to this Objection, Defendants argue "Plaintiff's claim fails as a matter of law because she has not adduced sufficient evidence to cast doubt on Defendant's proffered non-discriminatory reasons for her termination," and Plaintiff has not "come forward with sufficient evidence from which a factfinder could reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision."  (Doc. 104 at 15).

After careful review of the record, the Court has determined that Plaintiff's objection is without merit.  Defendants sent Plaintiff the October 19, 2016 and November 1, 2016 notices that detailed charges having nothing to do with Plaintiff's accommodations request and, in any event, these notices occurred prior to Plaintiff making the request.  Even before these two notices, Plaintiff received three due process notices on April 25, 2016, May 23, 2016, and June 27, 2016, and the June 27 notice included a summary of the allegations against her.  (*See generally* Doc. 68-1 at 7-13, 18-19, 21-22, 30-33).  Plaintiff has failed to

show that "retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process." *Krouse*, 126 F.3d at 501 (citing *Woodson*, 109 F.3d at 931-35). There are multiple letters spanning many months in the record that demonstrate repeated issues with Plaintiff's employment that did not relate to her disabilities. As such, the Court will overrule Plaintiff's objection.

Next, Magistrate Judge Mehalchick determined that the notices sent to Plaintiff were not null and void. (Doc. 100 at 15). Plaintiff argued in her opposition to the Motion for Summary Judgment that the notices were invalid because they were "issued without any prior/first, written warning, per LC AAA, Disciplinary Policy/Procedures." (Doc. 83 at 8-9). Magistrate Judge Mehalchick stated "this contention is unconvincing" because the policy at issue "also states that '[the] disciplinary grid is provided to offer guidance and instruction as it is related to the seriousness of the offense, it is not an all inclusive list and any infraction depending on the severity and type may result in discipline ranging from verbal warning to immediate dismissal.' (Doc. 84, at 4)." (Doc. 100 at 15). In addition, the policy explains that "[t]he County shall not be bound to this schedule when dealing with major disciplinary and/or repeated violations." (Doc. 84 at 5; Doc. 100 at 15). "Finally, these notices could be considered the written warnings which Allen asserts she never received; the policy calls for written warning to precede suspension and termination. (Doc. 84 at 7-9)." (Doc. 100 at 15).

Plaintiff objects to Magistrate Judge Mehalchick's analysis on this point. In particular, Plaintiff argues, "LC was not dealing with major, and/or repeat offenses by Allen."

18

(Doc. 103 at 11).  However, based on the record evidence, Defendants were, in fact,

dealing with repeat offenses by Plaintiff, as evidenced by the numerous due process notices

and written warnings dated April 25, 2016, May 23, 2016, June 27, 2016, July 22, 2016,

October 19, 2016, and November 1, 2016.  (Doc. 68-1 at 7-13, 18-19, 21-22, 30-33).  As

such, the Court will overrule Plaintiff's objection.

Plaintiff makes another objection, stating:

> The "Loudermill" right constitutionally protects and entitles Allen to written
> notice of charges, an explanation outline of LC evidence, a statement that she
> may contact her union representative to prepare her defense, plus to a proper,
> termination DPH, i.e. a fair hearing by an unbiased decision-maker (?), held
> at a meaningful time (certainly not when Allen has been and is still working
> absent on medical, mental-disability leave).
>
> Public employment requires both an informal pre-termination, plus post-
> employment, full evidentiary DPH to verify the truth of allegations.   LC
> bypassed Allen's rights by eliminating both DPHs, and forcing her to respond
> in writing to alleged charges, because she could not attend in-person.

(Doc. 103 at 12).

Plaintiff's objections are unsupported by the record.  Defendants provided Plaintiff

with multiple written notices of her charges on April 25, 2016, May 23, 2016, June 27, 2016,

July 22, 2016, October 19, 2016, and November 1, 2016.  (Doc. 68-1 at 7-13, 18-19, 21-22,

30-33).  In particular, the June 27, 2016, October 19, 2016, and November 1, 2016 notices

provided an extensive explanation of the specific allegations against Plaintiff.  (*Id.*).

Furthermore, all of the written notices stated Plaintiff had the right to union representation.

(Doc. 68-1 at 8, 12, 13, 22, 31).  Plaintiff had ample opportunity to participate in a due

process hearing and Defendants rescheduled the hearing many times to accommodate

Plaintiff's FMLA leave.  Plaintiff was not "forc[ed] to respond in writing;" instead, she had the

choice to respond in writing, appear at a due process hearing, or not respond at all.  As

explained by the June 27, 2016 notice,

> The exercise of an employee's entitlement to leave under the FMLA does not
> absolve that employee from responding to his/her employer's inquiries.  There
> is no right in the FMLA to be left alone.  Due process is, however, flexible and
> accounts for the factual circumstances of the particular situation at issue.
> Accordingly, please allow this notice to serve as an invitation to you to
> participate in your due process hearing and present your side of the story by
> way of correspondence.

(*Id.* at 7).

Based on the foregoing, the Court denies Plaintiff's objection.  Plaintiff has not

submitted any evidence to create a genuine issue of material fact regarding her ADA

retaliation claim.  As such, the Court will adopt Magistrate Judge Mehalchick's

recommendation to grant summary judgment on Plaintiff's ADA retaliation claim.

### ii. Count Four: Hostile Work Environment

To establish an ADA hostile work environment claim, a plaintiff must show that (1)

she is a qualified individual with a disability under the ADA; (2) she was subject to

unwelcome harassment; (3) the harassment was based on her disability or on an

accommodations request; (4) the harassment was "sufficiently severe or pervasive" so as to

alter employment conditions and create an abusive working environment; and (5) that the

employer knew or should have known of the harassment and did not take prompt effective

remedial action.  *Walton v. Mental Health Assoc. of Southeastern Pennsylvania*, 168 F.3d

661, 667 (3d Cir. 1999); *see also Hatch v. Franklin Cnty.*, 755 F. App'x 194, 201-202 (3d

Cir. 2018).  "To be sufficiently severe or pervasive, harassment must be shown to be both

objectively and subjectively hostile or abusive."  *Hatch*, 755 F. App'x at 667 (citations

omitted).  "'[T]he Americans with Disabilities Act does not make all harassment, or every

unpleasant working environment, actionable under the law.  Rather, to constitute a hostile

work environment under the ADA, the harassing conduct must be because of the plaintiff's

disability.'"  *Sampson v. Methacon Sch. Dist.*, 88 F.Supp.3d 422, 446 (E.D.Pa. 2015)

(quoting *Barclay v. Amtrak*, 435 F.Supp.2d 438, 448-49 (E.D.Pa. 2009)).

     Count Four of Plaintiff's Second Amended Complaint alleges a hostile work

environment claim.  (Doc. 35 at 6-9).  Among other things, Plaintiff alleges she "encountered

professionally offensive, unwelcome, unjustified, disciplinary actions (+) unnecessary,

repetitively scheduled, ADA Interactive Process Meetings...for Allen's Anxiety Disorder with

Major Depression[.]"  (*Id.* at 7).  Defendants argue that summary judgment should be

granted on this claim because "Plaintiff relies on eight (8) unpremeditated, isolated, and

sporadic incidents, not tied to any remark, comment, or insult regarding her alleged

disability in an ineffective effort to illustrate her claim."  (Doc. 69 at 20).  According to

Defendants, "every document of record pertaining to any disciplinary action taken against

Plaintiff are linked to legitimate, non-discriminatory examples of Plaintiff's malfeasance at

work."  (*Id.* at 22).  In her opposition to Defendants' Motion, Plaintiff argues that Defendants'

"continual bombardment of fraudulent disciplinary charges against Plaintiff . . ., along with

LC HR/AAA unnecessary, routine scheduling of ADA, IP meetings for the non-essential

duties/responsibilities . . . were severe, and pervasive acts, creating an ongoing hostile and

abusive, work environment, because of Plaintiff's, mental disabilities." (Doc. 83 at 10).

Judge Mehalchick explained that the record evidence cited to by Plaintiff[12] does not

support Plaintiff's hostile work environment claim because

> the communications identified by Allen as evidence of a hostile work
> environment, along with other communications contained in the record do not
> reference Allen's disability nor do they provide reason to infer that they are
> related to Allen's disability. (Doc. 83, at 10) (citing Doc. 1-3, at 10; Doc. 26-1,
> at 3-4, 5-6; Doc. 55-1, at 5-6; Doc. 68-1, at 7, 18-19, 30-31). Allen has failed
> to provide evidence that Defendants' conduct at issue was related to Allen's
> disability. *See Walton*, 168 F.3d at 667. As such, it shall be respectfully
> recommended that Defendants be GRANTED summary judgment on Allen's
> ADA hostile work environment claim. (Doc. 67).

(Doc. 100 at 20).

Plaintiff objects to Judge Mehalchick's recommendation that summary judgment be

granted, arguing that she "has entered adequate evidence that Defendants' misconduct

was, in fact, disability discrimination, which is a genuine dispute of material fact to be

---

[12] Judge Mehalchick explained that some of the records cited to by Plaintiff, including alleged
communications on September 25, 2014, November 17, 2014, September 20, 2015, and March 11, 2015
are not in the record and, as such, cannot be used to support her claims. (Doc. 100 at 18 n.16, 19 n.17).
Plaintiff asserts objections to Judge Mehalchick's statement that these records are not in evidence, arguing
that they "are available via LC-HRD records on Allen, and/or testimony from SEIU-668, Michelle Williard at
trial" and, similarly, the records are "readily available in LC-HRD's file on Allen, in SEIU-668 records &
testimony by Michelle Williard." (Doc. 103 at 13-14). Upon review of the record, the Court determines that
the alleged records from September 25, 2014, November 17, 2014, September 20, 2015, and March 11,
2015 are not in the record and, thus, cannot be used to support Plaintiff's claim. *See* Fed. R. Civ. P. 56(c).
Accordingly, Plaintiff's objections to Judge Mehalchick's exclusion of these alleged records are overruled.

determined only by a jury, which precludes Summary Judgment." (Doc. 103 at 14).[13]

However, Plaintiff has presented no evidence to demonstrate that the communications sent

to her had anything to do with her disability, nor does she raise any evidence of comments,

insults, or other statements or actions by Defendants that give rise to a material question of

fact regarding whether Defendants' conduct was related in any way to Plaintiff's disability.

See Barclay, 435 F.Supp.2d at 448 ("However, because Barclay cannot show that this

conduct was based on his disability or request for accommodation, or that it was sufficiently

severe or pervasive to alter the conditions of his employment, Amtrak is entitled to summary

judgment."). Accordingly, the Court denies Plaintiff's objections to Judge Mehalchick's R&R

on Plaintiff's hostile work environment claim and will adopt the conclusion therein.

### iii. Failure to Accommodate Claim

"'An employee can demonstrate that an employer breached its duty to provide

reasonable accommodations because it failed to engage in good faith in the interactive

process by showing that: 1) the employer knew about the employee's disability; 2) the

employee requested accommodations or assistance for his or her disability; 3) the employer

did not make a good faith effort to assist the employee in seeking accommodations; and 4)

the employee could have been reasonably accommodated but for the employer's lack of

---

[13] Defendant also objects to Magistrate Judge Mehalchick's statement that Plaintiff's allegation that Defendant Loughney's repeated rescheduling of interactive process meetings contributed to a hostile work environment does not support her claim of a hostile work environment because "this conduct was statutorily mandated." (Doc. 100 at 17, n.15; Doc. 103 at 13; see also Doc. 46 at 18, n.15). Upon review, this Court agrees with Judge Mehalchick's analysis and thus, overrules Plaintiff's objection.

good faith.'" *Moore v. CVS Rx Servs., Inc.*, 142 F.Supp.3d 321, 335 (M.D. Pa. 2015)

(quoting *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 772 (3d Cir.

2004)).

Judge Mehalchick recommends that summary judgment be granted on Plaintiff's

failure to accommodate claim.  (Doc. 100 at 22).

> [I]f "an employee requests an accommodation only after it becomes clear that
> an adverse employment action is imminent, such a request can be too little, too
> late.  The ADA does not mandate that an employer excuse an employee's
> previous misconduct, even if it was precipitated by his or her disability."
> *Lassiter v. Children's Hosp. of Phila.*, 131 F.Supp.3d 331, 351 (E.D.Pa. 2015).
> In *Willis v. Norristown Area School Dist.*, 2 F.Supp.3d 597 (E.D.Pa. 2014), the
> court granted summary judgment for the defendants when the plaintiff sought
> reasonable accommodation only after committing the conduct which resulted
> in his termination.  *Willis*, 2 F.Supp.3d at 609.  It is undisputed that Allen sought
> accommodation only after receiving due process notices on October 19, 2016,
> and November 1, 2016, both informing her that "if the County's information is
> accurate, your conduct constituted a violation of a standard of conduct [which]
> the County may reasonably expect from you, and is a serious matter.  This may
> result in discipline, up to and including termination." (Doc. 68, ¶ 20; Doc. 82, ¶
> 20; Doc. 68-1, at 22, 31).  It is undisputed that every reason given for Allen's
> termination on November 18, 2016, was also included in the due process
> notices on October 19, 2016, and on November 1, 2016, prior to her request
> for reasonable accommodation.  (Doc. 68, ¶¶ 14, 17, 23; Doc. 82, ¶¶ 14, 17,
> 23).  As in *Willis*, Defendants were not required to excuse Allen's previous
> misconduct upon her request for a reasonable accommodation.  *See Willis*, 2
> F.Supp.3d at 609.

(Doc. 100 at 22).  Plaintiff objects to Judge Mehalchick's analysis and her objection reads:

> On Friday, November 3, 2016 pm, Allen's request for a RA was posted to LC,
> and received three (3) business days later on November 8, 2016.
>
> LC's termination-AEA of Allen was issued on November 18, 2016 pm… *without
> a fair* (as it was 2x set for when Allen was still work absent on ADA mental-

disability leave), *impartial* (by biased decision-maker), *in-person* (Allen) *and union-represented* (SEIU-668), *proper, Due Process Hearing*.

LC, thereby, intentionally forced, then ignored Allen's, October 25, 2016, and November 9, 2016 responses to its 2x issued (October 19th + November 1st 2016), DPNH fabricated charges, and terminated her on the same, nine days later. Defense Counsel relates this as "too little, too late". Pro Se Plaintiff views it as "too much, too soon". The law required Pre+Post Termination DPH for Allen were never LC held (just like the ADA-IP Meeting on LC's July 28, 2016-email of a "temporary" transfer/functional demotion).

LC premeditated determination of Allen's guilt to its alleged infractions.

This genuine dispute of material fact on LC's, Failure to Accommodate requires jury determination, not Magistrate discretion.

(Doc. 103 at 14-15 (emphasis in original)).

In response to Plaintiff's objection, Defendants contend that after receiving the

October 19, 2016 and November 1, 2016 notices of the County's intention to proceed with a

due process hearing and "[b]elieving that adverse action may occur, Ms. Allen as a last-

ditch effort to delay an adverse employment action requested an interactive process

meeting, just as she had taken FMLA leave each previous time she had been provided with

a due process notice." (Doc. 104 at 21).

Upon review, the Court agrees with Judge Mehalchick's analysis on Plaintiff's failure

to accommodate claim. As previously mentioned, Plaintiff has not presented the Court with

any evidence whatsoever that raises a genuine issue of material fact as to whether her

termination was related to her request for reasonable accommodation. In contrast, the

record is replete with notices Defendants sent to Plaintiff putting her on notice that there

were alleged problems with her workplace conduct. (*See* Doc. 68-1 at 7-13, 18-19, 21-22,

30-33); *see also Willis*, 2 F.Supp.3d at 608 (noting that at the time in question, the

defendant did not know of the plaintiff's disability and "all the district knew was that plaintiff

had made inappropriate comments to students, as a result of which the District mandated

that plaintiff undergo professional counseling. Based on the evidence presented, no

reasonable jury could find that the district was aware that plaintiff had a disability at this

point."). Plaintiff has failed to "point to 'some' evidence from which a factfinder could

reasonably conclude that [Defendants'] proffered reasons were fabricated (pretextual)."

*Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Plaintiff's November 3, 2016, request

for accommodations occurred after Plaintiff had received notices regarding her workplace

conduct and disciplinary proceedings were in motion, and "[t]he ADA does not mandate that

an employer excuse an employee's previous misconduct, even if it was precipitated by his

or her disability." *Lassiter*, 131 F.Supp.3d at 351.

Accordingly, Plaintiff has failed to show that genuine issues of material fact remain

on her ADA failure to accommodate claim. Therefore, the Court will adopt Judge

Mehalchick's recommendation that Defendant's Motion for Summary Judgment on this

claim be granted.

### iv. ADA Disability Discrimination

"[T]o establish a *prima facie* case of discrimination under the ADA, the plaintiff must

show: '(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise

qualified to perform the essential functions of the job, with or without reasonable

accommodations by the employer; and (3) he has suffered an otherwise adverse

employment decision as a result of the discrimination.'" *Taylor*, 184 F.3d at 306 (quoting

*Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998)).  To defeat summary judgment,

Plaintiff must make a showing that "the disability 'played a role in the employer's

decisionmaking process and that it had determinative effect on the outcome of that

process.'"  *Moore*, 142 F.Supp.3d at 346 (quoting *CG v. Pa. Dep't of Educ.*, 734 F.3d 229,

236 (3d Cir. 2013)).

Judge Mehalchick determined that "the record contains no evidence that Defendants

considered Allen's disability in making decisions with regards to her employment."  (Doc.

100 at 23).  She continued, "[t]he communications between Defendants and Allen do not

demonstrate frustration or resentment towards Allen for the effects of her disability.  Allen

has failed to produce evidence that any adverse employment decision was a result of a

discrimination, rather than a consequence of her conduct."  (*Id.*).

Plaintiff objected to Judge Mehalchick's recommendation that this claim be

dismissed, arguing that she "has made an ample showing on record that disability played a

role in the LC, decision-making process with a determinative effect on the outcome of that

process to defeat summary judgment."  (Doc. 103 at 15).  However, Plaintiff does not point

to evidence in the record that establishes that she "has made an ample showing" that she

was terminated *because of* her disabilities.  *See Moore*, 142 F.Supp.3d at 346 ("Moreover,

the Court holds that Plaintiff has failed to adduce sufficient evidence demonstrating that she suffered any adverse reaction 'as a result of' or 'because of' her disabilities.").  Upon review, the Court finds no evidence from which a reasonable juror could determine that Plaintiff was terminated because of her disabilities.  As mentioned above, Plaintiff received multiple due process notices and written warnings because of her workplace conduct before she made her reasonable accommodation request.  (Doc. 68-1 at 7-13, 18-19, 21-22, 30-33).  Nothing in the notices directly or indirectly references her disability, nor has Plaintiff submitted evidence of discriminatory comments, insults, or other conduct by Defendants.  Because Plaintiff has failed to provide the Court with sufficient evidence of her claim, the Court will adopt Magistrate Judge Carlson's analysis that summary judgment should be granted on Plaintiff's claim for failure to accommodate under the ADA because there are no genuine disputes of material fact remaining for a jury to determine at trial.

### b. Claims Brought Pursuant to FMLA

In Count Three, Plaintiff alleges "disparate treatment and retaliation" pursuant to the Family Medical Leave Act ("FMLA").  (Doc. 35 at 5-6).  Plaintiff alleges "on July 18, 2016, LC used its 'Return from Medical Leave with No Restrictions' Policy to functionally demote Allen out of her Civil Service responsibilities, without any Procedural, Due Process Notice or Hearing, and on July 28, 2016 replaced Allen with the LC, newly hired, forty (40)-years younger, non-disabled, less-experienced, ACM1, Kimberly Young." (*Id.* at 5).

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtentenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-302 (3d Cir. 2012).

"[C]laims based on circumstantial evidence have been assessed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 37 L.Ed.2d 668 (1973), while claims based on direct evidence have been assessed under the mixed motive framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276-77, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)." *Id.* at 302.[14]

Here, Magistrate Judge Mehalchick determined that Plaintiff established a *prima facie* case of FMLA retaliation because "the record contains sufficient evidence to allow for the inference of a causal connection between Allen's use of FMLA leave and the possible functional demotion." (Doc. 100 at 28).  Judge Mehalchick determined that a reasonable juror could find that by removing Plaintiff from managing he caseload on July 28, 2016, Defendants' lessened her prestige, prevented her from completing her normal job duties, and potentially damage her career.  (*Id.* at 26).  Although a close call, a reasonable juror could find that the ten-day period between Plaintiff's return to work on July 18, 2016 and her

---

[14] Magistrate Judge Mehalchick analyzed Plaintiff's FMLA claim under the *McDonnell Douglas* burden shifting framework.  No party has objected to this application or asserted that direct evidence exists as to this claim which would require an analysis of the FMLA claim under *Price Waterhouse*.

change in job duties on July 28, 2016, according to Judge Mehalchick, was unusually

suggestive of causation.  (*Id.* at 27-28).

Ultimately, however, Judge Mehalchick concluded that summary judgment was

proper.  Judge Mehalchick explained:

> Since Allen has established her *prima facie* case, Defendants must articulate
> a legitimate, nondiscriminatory reason for the restrictions placed on Allen in the
> July 28, 2016 letter.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792,
> 802 (1973) (establishing burden-shifting framework for discrimination claims).
> If accomplished, the burden shifts back to Allen to prove, by a preponderance
> of the evidence, that the Defendants' articulated reason was a mere pretext for
> discrimination.  *Capps*, 847 F.3d at 152 (citations omitted).  Defendants have
> identified record evidence of a legitimate, non-discriminatory reason for their
> potentially adverse employment action; in the July 28, 2016, letter, Defendant
> Browning explains that the functional restrictions were a product of restrictions
> placed upon Allen by her physician for Allen's own benefit. (Doc. 68-1, at 272).
> Furthermore, Karen Schimelfenig, an administrative officer with the
> Lackawanna County Area Agency on Aging, testified before the Unemployment
> Compensation Board of Review to being familiar with the investigation and
> termination of Allen.  (Doc. 68-1, at 221).  She described Allen's physician
> expressing concern about Allen's cognitive ability, including her ability to
> concentrate, multi-task, and critically think when having exacerbations of
> anxiety.  (Doc. 68-1, at 228).  Schimelfenig concluded that the restrictions
> contained in the July 28, 2016, email were in response to the doctor's return to
> work restrictions.  (Doc. 68-1, at 229).
>
> Upon articulating a legitimate, nondiscriminatory reason for the restrictions
> placed on Allen, the burden falls on Allen to present evidence sufficient for a
> reasonable factfinder to conclude that Defendant's state reasons for taking
> action were pretextual, keeping in mind that the correctness of the reasons is
> irrelevant; a reason is pretextual only if the Defendant did not honestly hold the
> belief that the employment action was taken for the non-discriminatory reason
> given. *Capps*, 847 F.3d at 152, 155.  The record lacks evidence of such pretext.

(Doc. 100 at 28-29).

Plaintiff objects to Magistrate Judge Mehalchick's analysis.[15]  Plaintiff argues that

> Browning's stated reason, for functionally demoting ACM2 Allen by email on July 28, 2016 due to her physician's restrictions, is a pretext… because on May 5, 2015, when Allen returned to work from medical leave, Browning reinstated Allen into her former/pre-FMLA, ACM2 job with the same said 3, MD-exemptions in place.  (LPC-HRD records prove this).
>
> As dishonesty about a material fact is affirmative evidence of guilt, Defendants non-discriminatory reason to transfer/demote/replace Allen within days of her July 18, 2016 return from medical leave, is a genuine dispute of material fact; hence, Summary Judgment is made impossible.

(Doc. 103 at 18).

Upon review, the Court determines that Plaintiff has failed to "present 'some evidence' from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Capps v. Mondelez Global LLC*, 147 F.Supp.3d 327, 338 (E.D.Pa. 2015) (quoting *Fuentes*, 32 F.3d at 764-65).  Plaintiff has not demonstrated that there are "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Defendants'] proffered legitimate reasons for [Plaintiff's change in job duties]" such that a reasonable juror could "rationally

_____

[15] In one of Plaintiff's objections, she argues, that "Defendants refuse to acknowledge that Allen presented hard evidence of LC Browning's two (2), July 28, 2016 email message(s) that" she alleges support her claim.  (Doc. 103 at 16-17).  This objection, however, cannot reasonably be construed as an objection to Magistrate Judge Mehalchick's R&R because Plaintiff refers to evidence that Defendants, not Magistrate Judge Mehalchick, allegedly refuse to acknowledge.  (*Id.*).  As such, this argument in Plaintiff's Objections to the R&R are without merit insofar as Plaintiff attempts to assign error to the R&R issues in this case.

find then 'unworthy of credence.'"  *Capps*, 147 F.Supp.3d at 338 (quoting *Parker v. Verizon Pa., Inc.*, 309 F. App'x 551, 556-57 (3d Cir. 2009)).

The record is consistent with Defendants' proffered legitimate, non-discriminatory reason for the changes in her job duties and responsibilities.  The July 28, 2016 email explains that her job duties and responsibilities changed because of "the restrictions placed upon [her] job activities by her physician[.]"  (Doc. 68-1 at 272).  This is further supported by Karen Schimelfenig's testimony before the Unemployment Compensation Referee in which she explained that Plaintiff's change in job duties occurred because "[t]here was concern noted by [Plaintiff's] doctor regarding [her] cognitive ability" and "there was concern with concentrating, multi-tasking, critical thinking when having exacerbations of anxiety." (*Id.* at 228).  Ms. Schimelfenig agreed that Plaintiff's change in job duties was in response to her "doctor's return to work restrictions." (Doc. 68-1 at 229).  Accordingly, Plaintiff has not shown that there exist genuine issues of material fact as to her FMLA retaliation claim; thus, Magistrate Judge Mehalchick's recommendation will be adopted with respect to Plaintiff's FMLA claim.

### c. Constitutional Claims

Magistrate Judge Mehalchick next recommends that this Court grant summary judgment on Plaintiff's Fourteenth Amendment Due Process claims.  (Doc. 100 at 32).  Judge Mehalchick explained:

> The November 1, 2019, notice provided a questionnaire for Allen to complete which included charge-specific questions providing Allen the opportunity to

explain herself. (Doc. 68-1, ay 32-33). Indeed, Allen's characterization of the charges outlined in the due process notices as "fabricated" indicates an awareness of – albeit disagreement with – the charges levied against her by Lackawanna County. (Doc. 82, ¶ 14). Also included in the record are Allen's responses to these due process notices. (Doc. 68-1, at 28, 35-36). These responses establish that Allen challenged the merits of the evidence presented in the October 19, 2016, and November 1, 2016, notices and mailed the challenges to Defendant Loughney. (Doc. 68-1, at 28, 35). Allen was subsequently terminated for charges identified in the October 19, 2016, and November 1, 2016, notices. (Doc. 68, ¶ 23; Doc. 82, ¶ 23). As such, Defendants have established that prior to her termination, they provided Allen with written notice of the charges, an explanation of the employer's evidence, and an opportunity for Allen to tell her side of the story. *See Cipriana*, 177 F.Supp.2d at 319. Allen has submitted no evidence to establish a genuine dispute of material fact as to this process.

(*Id.* at 31-32).

Plaintiff objects, arguing that she did not receive "fair, impartial, and reasonable, Due Process Hearings" prior to her termination and Lackawanna County "has not complied with that law, in this case, which raises a genuine dispute of material fact, jury question, that is not disposable by MJ recommended summary judgment." (Doc. 103 at 19).

The Fourteenth Amendment to the United States Constitution states that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Fourteenth Amendment places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978). "At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful

opportunity to be heard." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998).  If

circumstances create a property interest in continued public employment, then "the Due

Process Clause provides that [that interest] cannot be deprived except pursuant to

constitutionally adequate procedures." *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532,

541 (1985).  A public employee with a property interest in continued employment "is entitled

to oral or written notice of the charges against him, an explanation of the employer's

evidence, and an opportunity to present his side of the story," before he may be terminated.

*Id.* at 546.  The pretermination hearing "should be an initial check against mistaken

decisions – essentially, a determination of whether there are reasonable grounds to believe

that the charges against the employee are true and support the proposed action." *Id.*

Here, it is undisputed that Plaintiff received two written due process notices on

October 19, 2016, and November 1, 2016, each of which identified the charges asserted

against Plaintiff.  (Doc. 68 at ¶¶ 13-17; Doc. 83 at ¶¶ 13-17).  It is also undisputed that

Plaintiff had the opportunity to respond to the allegations; in fact, Plaintiff did respond to the

October 19, 2016, pre-termination notice on October 25, 2016, and she responded to the

November 1, 2016, notice on November 9, 2016.  (Doc. 68 at ¶ 15; Doc. 82 at ¶ 15; Doc.

68-1 at 28, 35-36).  Upon review, it is clear that Plaintiff's objection to the R&R is without

merit.  There is no evidence from which a reasonable juror could find that Defendant

Lackawanna County denied Plaintiff pre-termination procedural due process.

Although Plaintiff, Defendants, and Judge Mehalchick failed to substantively address Plaintiff's post-termination due process rights, this Court will address Plaintiff's post-termination rights.[16]  "[T]o state claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). The Third Circuit has explained that "'no single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause.'" *Dykes v. SEPTA*, 68 F.3d 1564, 1571 (3d Cir. 1995) (quoting *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 483 (1982)).

Plaintiff had available to her post-termination remedies that would satisfy due process.  In the Notice of Termination letter sent to Plaintiff on November 18, 2016, Defendants attached "two copies of the Civil Service Commission Appeal Request Form" and copied Michelle Williard of SEIU 668, Plaintiff's Union, on the Notice of Termination. (Doc. 68-1 at 39-43).  In addition, the record evidence shows that Plaintiff was covered under provisions of a collective bargaining agreement entered into by Service Employees International Union AFL-CIO, Local 668 and the Lackawanna County Area Agency on Aging.  (*See* Doc. 84 at 10-20); *see also Dykes*, 68 F.3d at 1571 ("Where a due process

---

[16] In her Objections to the R&R, Plaintiff briefly mentions that "[p]ublic employment requires both an informal, Pre-Termination Hearing, plus, a full, Evidentiary, Post-Employment Hearing."  (Doc. 103 at 19). Plaintiff, however, does not substantively address the merits of the post-termination hearing issue.

claim is raised against a public employer, and grievance and arbitration procedures are in

place, we have held that those procedures satisfy due process requirements even if the

hearing conducted by the Employer ... [was] inherently biased." (internal citations and

quotations omitted)).  Despite the availability of post-termination due process remedies,

nothing in the record evidence in this case shows that Plaintiff availed herself of either post-

termination due process avenues, though it is clear she had the right to do so.

Accordingly, no claim of deprivation of a post-termination due process remedy has

been made by Plaintiff, and none could have been made since she failed to pursue either

remedy.  *See Alvin*, 227 F.3d at 116 ("'[A] state cannot be held to have violated due process

requirements when it has made procedural protection available and the plaintiff has simply

refused to avail himself of them.'"  (quoting *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir.

1982)); 41 P.S. § 1101.903 ("Arbitration of disputes or grievances arising out of the

interpretation of the provisions of a collective bargaining agreement is mandatory.").

### d. Supplemental Jurisdiction

Finally, Plaintiff's Second Amended Complaint alleges two state law claims: fraud

and intentional infliction of emotional distress.  (Doc. 35 at 4, 9).  Magistrate Judge

Mehalchick recommends that this Court decline to extend jurisdiction over Plaintiff's state

law claims and dismiss them without prejudice.  (Doc. 100 at 32-33).  Judge Mehalchick

explained that because she recommends that this Court grant summary judgment on all of

Plaintiff's federal claims, "the balance of factors in this case 'point[s] toward declining to

exercise jurisdiction over the remaining state law claims.'" (*Id.* at 32 (quoting *Carnegie-Mellon Univ v. Cohill*, 484 U.S. 343, 350 (1988)).

Plaintiff objects to Judge Mehalchick's recommendation, arguing

[o]n de novo, legal review of this whole, case record, with the totality of its circumstances, via both the letter & spirit of constitutional & federal law, by any unbiased, Article III, District Judge, will result in right & justice, which is that end which ought to be reached in any case by the regular administration of the principles of law involved, as applied to the facts.

. . .

A *government/attorney* *misrepresentation/fraud upon any court* should distinguish a case as "*out of the ordinary*". JCM Firm's, Defense Attorneys, and Defendant have professional representation, and personal, legal interest in the Summary Dismissal to all of Allen's claims, i.e. "the balance of factors" in this 42 U.S.C. 1983, Intentional-Discrimination case.

(Doc. 103 at 20).

A district court may decline to exercise supplemental jurisdiction over a claim if the district court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Whether to exercise supplemental jurisdiction over a particular claim is within the Court's discretion, and the Court should base its decision on "considerations of judicial economy, convenience and fairness to the litigants." *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (citations and quotations omitted); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Based upon the above analysis, this Court will grant summary judgment on all federal claims asserted by Plaintiff over which this Court has original jurisdiction. While this Court has the discretion to exercise jurisdiction over Plaintiff's two state law claims, it

37

declines to do so.  *See Kach*, 589 F.3d at 650 ("Here, the District Court plainly recognized

its discretion to retain jurisdiction over Kach's remaining state-law claims but, having

dismissed all of her federal claims, declined to do so for a reason that Congress explicitly

green-lighted under these circumstances." (citing 28 U.S.C. § 1367(c)(3); *Figueroa v.*

*Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir. 1999)).  Plaintiff's objections fail to cite to

the record or caselaw to advance her argument that the Court should exercise its discretion

to extend jurisdiction over her state law claims.  Based on the foregoing analysis, the Court

will overrule Plaintiff's objections to the R&R and will dismiss Plaintiff's state law claims

without prejudice.  *See Kach*, 589 F.3d at 650 (finding that the district court did not abuse its

discretion in dismissing state law claims without prejudice where all of the federal law claims

had been dismissed).

## IV. Conclusion

Based on the above analysis, the Court will grant Defendants' Motion for Summary

Judgment (Doc. 67) as to Plaintiff's federal claims and will decline to exercise supplemental

jurisdiction over Plaintiff's state law claims, thereby dismissing the state law claims without

prejudice.  As such, the Court will adopt Magistrate Judge Mehalchick's R&R (Doc. 100).  A

separate Order shall issue.

Robert D. Mariani
United States District Judge

4/13/22